IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHERYL P. SANDIDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0116-CV-W-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

I. **Procedural Background**

On May 29, 2001, plaintiff applied for disability benefits, pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.* (Tr. 57-58). On the same day, plaintiff filed an application for supplemental security income based on disability, pursuant to Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* (Tr. 283-84). On both applications, plaintiff alleged a disability onset date of September 2, 1995. Plaintiff alleged that she was unable to work due to sharp pain and numbness in her lower back and hip, and pain and weakness in her right leg. (Tr. 109). On August 9, 2001, plaintiff claimed additional allegations including depression, and increased pain in her back. (Tr. 119).

Plaintiff's applications were denied, and plaintiff requested a hearing which was held on May 14, 2003. (Tr. 293-336). By a decision dated September 12, 2003, the ALJ found that plaintiff suffered from degenerative disc disease, which although severe, did meet a listing. (Tr. 17). The ALJ

also found that while plaintiff was diagnosed with an affective disorder manifested as depression, it resulted in no more than occasional mild functional limitations, and did not impose significant limitations upon plaintiff's ability to perform basic work-related activities. (Id). Therefore, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, and 10 pounds frequently; sit or stand up to 30 minutes at a time; walk short distances throughout the course of a normal work schedule; and is limited to job tasks with a sit/stand option. (Tr. 22). Ultimately, the ALJ concluded that plaintiff retained the RFC to perform her past relevant job as a daycare worker. (Tr. 22-23). For the reasons set forth herein, the decision of the ALJ is affirmed.

**II.     Factual Background**

The facts are thoroughly presented in the parties' briefs and will be merely summarized here. Prior to plaintiff's testimony, the ALJ noted that although plaintiff claimed an onset disability date of September 9, 1995, the record revealed earnings in 2000 of $26,000, as well as earnings in 2001 of $6,162 and $8,409 in 2002[1]. (Tr. 296). Plaintiff's attorney explained that plaintiff confused the date with a Workers' Compensation injury of September 9, 1995; for purposes of social security disability benefits, the claimed alleged a disability onset date would be September of 2000. (Tr. 296-97).

---

[1] After reviewing these sums, the ALJ noted that plaintiff was currently employed, and, notwithstanding her alleged impairments, she would not be entitled to disability insurance benefits if her earnings were considered to be substantial and gainful activity. (Tr. 296). The ALJ then reserved judgment on this issue. (Id).

Plaintiff's Testimony

At the time of the hearing, plaintiff was 49 years of age. (Tr. 298). In September of 2000, plaintiff was injured in a vehicle accident while driving a Kansas City Metro bus when it was hit by a freightliner truck. (Tr. 299). In October of 1997, plaintiff underwent back surgery in which 30 percent of her discs at L3 and 4 were removed. (Tr. 300-01). In February of 2001, plaintiff underwent a second back surgery at L5. (Tr. 299-301). Plaintiff testified that she felt worse after the second surgery, but was able to return to work on April 23, 2001. (Tr. 299-300, 303). Plaintiff ultimately resigned in May of 2001, because she was fearful of having an accident due to a decrease of feeling in her right leg. (Tr. 302, 304). Plaintiff explained that working at a less strenuous job with the bus company would require her to bid for an office job, but she did not meet the qualifications, i.e. typing skills. (Tr. 303).

Plaintiff explained that she earned $8,409 in 2002 while working at the Link in the Kansas City School District. (Tr. 304).[2] She worked a split shift 4 days a week for 5 hours a day; i.e. 6:45 a.m. to 8:45 a.m., then 3:00 p.m. until 6:00 p.m. (Tr. 305-06). Her responsibilities included taking care of 2nd graders before and after school. (Tr. 306). Plaintiff explained that the children played board games, basketball, and volleyball, but she did not have to exert herself. (Tr. 307-08). However, she did not feel that she could perform the job for 8 hours with a 15 minute break every 2 hours because it would be too painful. (Tr. 308). In the afternoon, she takes the children to the restroom, snack, and assists with them with their homework; she plays board games with the children, but she does not participate in the sport activities. (Id).

---

[2]Prior to that time, plaintiff applied for Medicaid, but her application was denied. (Tr. 305).

The ALJ noted that plaintiff used a cane which was not recommended by a doctor, and that she stood during much of the hearing to stretch her body. (Tr. 308-09). Plaintiff estimated that she could sit for 30 minutes without getting up to stretch, and could stand for 30 minutes. (Tr. 309-10). Plaintiff testified that the pressure in her back was not relieved by laying down, rather, relief was achieved from moving around. (Tr. 310). Plaintiff takes Advil and Tylenol for pain, but not on a regular basis. (Id). Plaintiff has visited her physician, Dr. Blatt, three times this year, and he recommended another surgery to debride part of a bone that has fractured off from a disc and was pinching a nerve on her vertebrae. (Tr. 311-12).

Plaintiff felt she was depressed because of problems with her job as a bus driver and her back, but when she began working at Link, she felt less depressed. (Tr. 313). Sometimes plaintiff feels like giving up and taking her life, but her belief in God restrains her. (Tr. 314). Plaintiff used to take Zoloft for depression, but has not been treated by a doctor since her insurance lapsed because she cannot afford it. (Tr. 315). She is treated by Dr. Blatt through Workers' Compensation. (Id).

Plaintiff testified that she has good days, and bad days when her right leg hurts, and it feels numb; she doesn't hurt all day, but during certain times of the day. She agreed that her present job at Link was non-exertional, and she did not feel she could perform a job requiring attention to detail when she was in pain. (Tr. 316-17).

Plaintiff graduated high school, and has been working ever since. (Tr. 317). She previously worked as a pieceworker at a factory where she sewed the facings on coats; she did not feel she could perform such work presently because periodically she has to be able to get up from a sitting position and walk around. (Tr. 317-18). She then worked at Parmele Plastic where she packaged ear

4

plugs, and stamped helmets; she could not return to that job due to the long periods of sitting. (Tr. 318). She began driving the city bus in November of 1979. (Tr. 319).

Plaintiff is able to drive, and drove herself to the hearing, but, generally, she can only drive for 10 to 15 minutes before pulling over to get out and stretch. (Tr. 320). After driving to the hearing, she felt a tingling sensation in her foot, but it was not numb. (Id). Plaintiff has missed a significant amount of time from work at Link due to her back, i.e. she has never worked a full pay period of two weeks. (Tr. 321). Plaintiff repeated that she could not work an 8 hour job because of the pain on the right side of her lower back, hip, thigh, and leg. (Tr. 322-23). However, she felt she could work as a security monitor watching a screen if she could sit, stand, and move about, but she would need to increase her medication for pain. (Tr. 323-24).

When the pain is bad, plaintiff does not sleep well at night, sometimes only 1 hour or 20 minutes; the lack of sleep affects her ability to concentrate the next day. (Tr. 324). Sometimes plaintiff cannot work her morning shift due to lack of sleep, and other times, she does not work her afternoon shift if the pain is too bad. (Tr. 325).

Medical Testimony

Psychologist, Dr. George Chance, reviewed the record and found that there was very little information regarding plaintiff's mental health. (Tr. 327). There were 2 entries revealing a diagnosis of major depressive disorder, but there was no treatment, and no medications prescribed. (Tr. 327). Dr. Chance mentioned that part of the record noted that plaintiff took Advil, Tylenol, and drank alcohol to relieve back and leg pain, and to induce sleep. (Id). Dr. Chance testified that the diagnoses of depression were noted by Dr. Blatt in March of 2001, and another doctor in August of 2001, but

5

there was no indication of the basis for the diagnoses. (Tr. 328). Based on the record, Dr. Chance could not offer an opinion as to whether plaintiff was indeed depressed. (Id). Dr. Chance agreed that plaintiff testified that she does not feel suicidal when she is able to pay her bills. (Tr. 329).

Vocational Expert Testimony

Vocational consultant, Barbara E. Myers, testified that plaintiff's past work as a city bus operator was considered medium to semi-skilled, and her work as a daycare worker was considered light level, semi-skilled. (Tr. 330). The ALJ asked Ms. Myers to assume a hypothetical individual with plaintiff's history of back injuries and 2 back operations with complaints of pain in the lower back and right lower extremity, and who could not lift more than 50 pounds, or 20 pounds frequently. (Tr. 330). Ms. Myers opined that such an individual could work as a bus driver. (Tr. 331).

Ms. Myers was then asked to assume a hypothetical person who could lift 20 pounds occasionally, carry up to 10 pounds, and would need to sit or stand during the workday. (Tr. 331). Ms. Myers opined that such an individual could not perform the job of bus driver, but could perform as a child daycare worker. (Id).

Other jobs considered at the light level, with a sit/stand option, would include a gate guard of which there were 5,400 jobs nationally; office helper/messenger of which there were 1,700 jobs in Missouri, and 116,800 jobs nationally; information clerk of which there were 280 jobs in Missouri, and 14,800 jobs nationally. (Tr. 331-33).

Ms. Myers further testified that if the hypothetical person was absent from work for 2 to 4 days a month, the individual could not maintain competitive employment. (Tr. 333). Ms. Myers

6

defined a sedentary job as one in which a person sits most of the time and lifts less than 10 pounds. (Tr. 334).

**III.     Standard of Review**

The standard of review in social security cases is narrow. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." Masterson v. Barnhart, 363 F.3d 731, 736 (8th Cir. 2004); quoting, Pearsall v. Massanari, 274 F.3d at 1217. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. If, after reviewing the record as a whole, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision. Masterson, at 736; Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). It is not the job of the court to re-weigh the evidence or substitute its own judgment for that of the Commissioner. Masterson, at 736. Weighing the evidence is a function of the ALJ, the fact-finder. Id. On review, a determination must be made as to whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Id.

**IV.     Analysis**

Plaintiff raises only one error; the ALJ's determination that, based on the lack of prescription pain medication, plaintiff's allegations of pain were not credible. Plaintiff contends that the record

7

showed she could not return to her past work as a truck driver[3], and that as an individual approaching advance age, sedentary work should not have been considered. Thus, plaintiff argues that the ALJ's decision that she could perform other jobs, was not supported by substantial evidence. Contrary to plaintiff's contention, this decision was based on a number of factors which constitute substantial evidence.

When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC. <u>Masterson v. Barnhart</u>, 363 F.3d at 737. This requires that the ALJ consider all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations. <u>Id</u>.

Regarding plaintiff's allegations of back and leg pain, the ALJ noted that in October of 1995, plaintiff had been involved in a motor vehicle accident while working as a city bus driver, and that an MRI of the lower spine revealed moderate sized herniation at L5-S1, a mild midline protrusion of the disc at L4-L5, and an actual herniation of the nucleus pulposus at L3-L4. (Tr. 19, 127). Treatment consisted of epidural and trigger point injections, and plaintiff returned to work. (Tr. 19).

In July of 1997, plaintiff was again involved in a motor vehicle accident while on-duty, and an MRI scan revealed a right sided disc herniation at L5-S1; initial treatment included epidural injections. (Tr. 19, 144-45). On October 14, 1997, a lumbar diskectomy was performed by Dr. Blatt. (Tr. 141-42). By letter dated February 27, 1998, Dr. Blatt released plaintiff to return to work on March 2, 1998, and using the American Medical Association's guidelines, opined that plaintiff had a 5% permanent partial disability. (Tr. 19, 209).

---

[3]Presumably, plaintiff means "bus driver" as evidenced in the record.

8

Case 4:04-cv-00116-HFS   Document 13   Filed 09/13/05   Page 8 of 13

In April of 1998, plaintiff was involved in another motor vehicle accident, this time while off-duty. (Tr. 19, 190). The assessment of the emergency room physician was lumbar strain, and she was sent home with Ibuprofen. (Id).

On September 1, 2000, plaintiff was involved in a motor vehicle accident while on-duty, and Dr. Blatt performed a right L3-L4 laminotomy[4] and discectomy[5]. (Tr. 19-20). By December 29, 2000, Dr. Blatt found that plaintiff's condition improved, but symptoms persisted in her right low back and right anterior thigh, which were exacerbated by prolonged sitting. (Tr. 203). Thus, he suggested another MRI scan which revealed a herniated disc at L3-L4 associated with stenosis, mild stenosis at L2-L3 and L4-L5, and degenerative disc disease. (Tr. 201-02). By letter dated April 20, 2001, Dr. Blatt returned plaintiff to work, and although he did not have any hard facts to prevent her from returning to her prior occupation, he opined that all parties involved would be better served if plaintiff were able to work at a job that did not involve constant riding around and bouncing. (Tr. 19, 196). Using the American Medical Association's guidelines, Dr. Blatt opined that plaintiff had a permanent partial disability of 10%. (Tr. 197).

On July 13, 2001, plaintiff presented to Dr. Lois McKinley complaining of depression due to health problems, pain radiating from her right buttocks down to her leg, and weakness of the right leg. (Tr. 20, 245). After a motor exam, Dr. McKinley found that plaintiff had marked weakness of the right compared to the left leg, and prescribed muscle relaxant and antidepressant medication. (Tr. 20, 244).

---

[4]An operation on one or more vertebral laminae (thin plate or flat layer). *Physician's Desk Reference Medical Dictionary, 1st ed., pg. 932, 934.*

[5]Excision, in whole or in part, of an intervertebral disk. Id., at 491.

9

On August 20, 2001, Dr. Ronald Holzschuh performed a psychological evaluation and found that plaintiff felt helpless due to health problems which resulted in lost employment, a failed long-term relationship, and caring for an aged parent dying of cancer. (Tr. 262). Dr. Holzschuh opined that plaintiff appeared capable of understanding and remembering instructions, but had poor concentration and persistence interfered with by chronic pain and depressive ideation. (Tr. 262-63). He also found that plaintiff's helpless attitude contributed to poor social interactions and she would likely have difficulty adapting to changes in her environment. (Tr. 263). Nevertheless, Dr. Holzschuh found plaintiff to be quite capable of managing funds in her own best interests; and diagnosed plaintiff with major depressive disorder, severe, without psychotic features. (Id).

In a Mental Residual Functional Capacity Assessment, Dr. Kathleen King did not find plaintiff to be markedly limited in any of the functions tested. (Tr. 264-65). However, plaintiff was found to be moderately limited in her ability to understand, remember or carry out detailed instructions, and in her ability to interact appropriately with the general public. (Id).

The record contains two references to potential substance abuse problems. Notes from the Plaza Counseling Group dated March 10, 2000, contain a suggestion that plaintiff contact Al-Anon. (Tr. 147). The questionnaire completed by plaintiff, and presumably relied on by the counselor, does not indicate substance abuse (Tr. 150-51)[6], thus, it is unclear as to the basis for this suggestion. In an undated questionnaire about non-prescription medications, plaintiff stated that she drinks alcohol and smokes weed to relieve back and leg pain. (Tr. 126). However, in and of itself, these references do not lend themselves to a finding of substance abuse, and plaintiff has not raised such a possibility.

---

[6]In fact, although plaintiff expressed concern about weight change, headaches, chest pain, low blood pressure, and fatigue, she did not indicate a concern about the use of drugs or alcohol. (Tr. 151).

Even assuming the presence of substance abuse, the record does not demonstrate that plaintiff would be disabled by her other impairments if she stopped using alcohol[7]. Fastner v. Barnhart, 324 F.3d 981, 985 (8th Cir. 2003); see also, Welch v. Barnhart, 355 F.Supp.2d 1008, 1015 (E.D.Mo. 2005). Moreover, the mere fact that a claimant uses or has used alcohol or drugs, and may even be addicted to same, is no longer a basis for entitlement to disability benefits under the Act. Id.

In addition to medical evidence, other relevant evidence included plaintiff's own description of her pain and limitations. Masterson v. Barnhart, 363 F.3d at 738 (citations and quotations omitted). In evaluating plaintiff's credibility, the ALJ was required to consider: (1) plaintiff's daily activities; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the dosage, effectiveness, and side effects of any medication; and (5) plaintiff's functional restrictions. Masterson v. Barnhart, 363 F.3d at 738; see also, Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

Based on questionnaires completed by plaintiff, the ALJ found that plaintiff was able to engage in a wide variety of activities of daily living, performed all of her household chores, and served as the primary care giver of her terminally ill father; therefore, suggestive of a greater physical capacity than testified to at the hearing. Further evidence that plaintiff's reports of pain were not as debilitating as alleged is her current employment status. Maddox v. Massanari, 199 F.Supp.2d 928, 942 (E.D.Mo. 2001) (evidence of employment during period of alleged disability

---

[7]Current Social Security regulation states that a claimant can no longer be considered to be eligible for disability benefit payments under either Title II or Title XVI of the Act if substance addiction is a contributing factor material to any formal finding of disability under the Social Security Act. Welch v. Barnhart, 355 F.Supp.2d at 1015. However, alcoholism is still relevant to the extent that it may have resulted in serious secondary damage to the brain, liver, or other vital organs. Id.

11

is highly probative of a plaintiff's ability to work). Plaintiff testified that the pain is so severe that she has been unable to complete a full work week. However, there is no medical evidence from any of the treating or examining physicians suggesting that plaintiff is unable to work. In fact, Dr. Blatt, expressly recommended that plaintiff return to work, but in a position that did not require prolonged sitting accompanied by bouncing.

The ALJ correctly noted that plaintiff does not take any prescribed pain medication, but, rather, relies on over-the-counter analgesics. Complaints of disabling pain are inconsistent with a failure to take prescription medication. Matney v. Apfel, 48 F.Supp.2d 897, 903 (W.D.Mo. 1998). Although plaintiff's claim of lack of financial resources for prescription medication somewhat ameliorates a finding of incredibility, the ALJ correctly noted that stronger pain medication was not prescribed[8]. It is also noted that in contravention of Dr. Blatt's recommendations, plaintiff's failure to complete the prescribed number of treatments is inconsistent with complaints of a disabling condition. (Tr. 180). Maddox v. Massanari, 199F.Supp. at 942.

In reviewing the medical evidence presented, there is no evidence of either a physical or mental nature which precludes plaintiff from performing any and all employment. While there is evidence of back and leg pain, sometimes accompanied with weakness in her right leg, and plaintiff faces certain challenges, there is no evidence that plaintiff cannot work under certain conditions. Indeed, plaintiff has been successfully employed as a child daycare assistant which has admittedly decreased her level of depression, and has provided plaintiff with a flexible schedule.

---

[8]Dr. Blatt was plaintiff's treating physician and performed both back surgeries, yet his records suggest physical therapy as opposed to prescribed medications. (Tr. 196-215).

12

Often the important issue is not whether a claimant "is experiencing pain; the real issue is how severe that pain is." Maddox v. Massanari, 199 F.Supp.2d at 941. The issue here, is whether plaintiff's subjective complaints, including pain, are so severe that she cannot even perform sedentary work. Id. The mere fact that working may cause pain or discomfort does not require a finding of disability. Id. Based on the evidence presented, including the medical record, and plaintiff's subjective complaints, the ALJ's determination that plaintiff retained the ability to continue her current position as a daycare worker was supported by substantial evidence, and should be affirmed. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (deference to the ALJ's credibility findings is warranted when they are supported by good reasons and substantial evidence).

Accordingly, it is hereby

ORDERED that plaintiff's request for judgment is DENIED, and the decision of the Commissioner of Social Security is AFFIRMED. The clerk of the court is directed to enter judgment in favor of defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 13, 2005

Kansas City, Missouri

13

Case 4:04-cv-00116-HFS   Document 13   Filed 09/13/05   Page 13 of 13